UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEIRDRE C. GLASCOE a/k/a DEIRDRE ROSE,

Plaintiff,

-against-

JOSHUA SOLOMON, in his individual and official
capacity as Principal of Business of Sports School,
RICHARD CINTRON, in his individual and official
capacity as Superintendent, RICHARD A. CARRANZA,
in his individual and official capacity as Chancellor,
NEW YORK CITY DEPARTMENT OF EDUCATION,
*et al.*,

Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __3/17/2020__

18 Civ. 8284 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiff *pro se*, Deirdre C. Glascoe, was a special education teacher at the Business of

Sports School, a public school in Manhattan. Compl. ¶¶ 126, 147, 152, ECF No. 25. She brings

this action on behalf of (1) herself, individually, "as a descendant of African slaves ('DOA[S]'),"

(2) on behalf of all DOAS, and (3) on behalf of God, under federal, state, and local law. *See id.*

at 12–16; *see id.* ¶ 120.[1] Defendants, Joshua Solomon, Richard Cintron, Richard A. Carranza,

and the Board of Education of the City School District of the City of New York ("DOE"),[2] move

to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). ECF No. 30. Plaintiff

moves to "strike" Defendants' motion to dismiss and reply brief. ECF Nos. 57, 63. For the

reasons stated below, Defendants' motion is GRANTED and Plaintiff's motions are DENIED.

---

[1] Citations to a page in the complaint refer to the ECF page number.
[2] Although Plaintiff sued the New York City Department of Education, a different municipal entity, the Board of
Education of the City School District of the City of New York indicates that it is the proper party. Def. Mem. at 2,
ECF No. 31.

# BACKGROUND

I.    Factual History

Plaintiff states that this is a "trifurcated action originating out of the same set of facts." Compl. at 17.

First, Plaintiff contends that "God wants the return" of his "property," and under the equal protection clause of the United States Constitution, "justice from the states for terrorizing [h]is children." *Id.* The "property" Plaintiff refers to is "the lives of negro[e]s and their descendants, which are the property of God." *Id.* at 16. Plaintiff explains that she has been "specially trained by God to interpret the Word of God using Kabbalah, Data Science and The Lord's Cipher™ to translate God's word for the court. God Himself shall testify and defend His Holy Name." *Id.* at 19.

Second, "this is a case about employment discrimination and retaliation." *Id.* at 17. In January 2017, Plaintiff was hired to work as a probationary substitute teacher under the New York City Teaching Fellows program.[3] *Id.* ¶¶ 142, 147, 312. She taught at the Business of Sports School, run by Principal Joshua Solomon. *See id.* ¶¶ 147, 160. Plaintiff worked as an Integrated Collaborative Team teacher. *See id.* ¶ 152. She began teaching in the Science department but was later moved to several other departments, including English, History, and most recently, Math. *See id.* ¶¶ 200–201.

Plaintiff met Solomon when she began teaching at the Business of Sports School. *Id.* ¶ 147. Plaintiff claims that she sensed that Solomon "was not comfortable with [her] presence," and noticed that "his name indicated that there would be a battle between [P]laintiff

---

[3] The New York City Teaching Fellows is an alternative certification program that aims to improve the quality of education in New York City public schools by attracting mid-career professionals, recent graduates, and retirees from all over the country. *See NYC Teaching Fellows*, at https://nycteachingfellows.org/; *see also* Def. Mem. at 4 n.3.

and Solomon over wisdom." *Id.* ¶¶ 148–149 ("Joshua is symbolic for an epic battle of epic proportions between the children of God and the children of Satan—Armageddon. Solomon is symbolic for wisdom. So Armageddon is a battle over wisdom.").[4]

Plaintiff alleges that she faced race and religion-based discrimination from her first day of work. *Id.* ¶ 150. She claims that a white biology teacher, Kelli Smith, refused to work with her, "a black special education teacher, descendant of African slaves, because [Plaintiff] wore a headscarf which resembled a hijab—a head covering worn in public by some Muslim women, though [Plaintiff] is Christian." *Id.* ¶ 152. Plaintiff alleges that Solomon "disciplined" her for alerting school administrators about her dispute with Smith—threatening to give her a negative rating for undermining Smith. *Id.* ¶¶ 163, 322.

Plaintiff alleges that she also faced age discrimination. During a conference attended by Solomon, Plaintiff, and Plaintiff's union representative, Tankia Thomas, Solomon was "prepared" to include a disciplinary notice in Plaintiff's file. *Id.* ¶ 200. Thomas asked Solomon to not do that because Plaintiff was a new teacher and "it was customary to give new teachers some leeway for making mistakes." *Id.* According to Plaintiff, Solomon responded that Plaintiff "was old enough to know better." *Id.*

According to Plaintiff, during her tenure at the Business of Sports School, she was on medical leave from October 2, 2017 until January 2, 2018. *Id.* ¶¶ 132, 134. A letter Solomon sent Plaintiff, dated September 26, 2018 (the "September 26 Letter"), which is referenced in the complaint and attached to the declaration of Assistant Corporation Counsel Katerina Souliopoulos, states, however, that Plaintiff was on leave for the period of January 29, 2018

---

[4] Plaintiff's complaint is replete with similar statements. *See* Compl. at 11 ("The Lord has given [P]laintiff His sword and authorized plaintiff to use it. Sword is an anagram for words. Plaintiff shall use words to tear down anyone and anything that sets itself up against God."); *see e.g.*, *id.* ¶¶ 94, 97, 144, 168, 183, 204.

through June 30, 2018.  *See id.* ¶ 327; September 26 Letter, ECF No. 32-5.[5]  Plaintiff's home of

record at the time she applied for leave was located within New York State.  September 26

Letter.  Plaintiff concedes that throughout her leave she was residing in Virginia, in violation of

Chancellor's Regulation C-603, which prohibits relocation either permanently or temporarily to

any place remote from an employee's home of record without the express written permission of

the DOE Chancellor or School Medical Director.  *Id; see also* Compl. ¶ 346.

In January 2019, Solomon recommended that Plaintiff's probationary service be

discontinued.  *See id.* ¶¶ 270, 339.  Superintendent Richard Cintron affirmed that decision and

terminated Plaintiff's employment, effective February 8, 2019.  *Id.* ¶¶ 270, 339.

Plaintiff alleges that she was fired from her job for "blowing the whistle on the

brainwashing, oppression and mistreatment of descendants of African slaves at the Business of

Sports School."  *Id.* at 17.  Plaintiff further alleges that her union, the United Federation of

Teachers ("UFT"), conspired with Defendant DOE to terminate her employment.  *Id.* ¶¶ 203–

206.[6]

Third, Plaintiff states that "this is a case about human rights and civil rights violations—

modern-day slavery in the United States—oppression under color of law, oppression under color

of office, which are byproducts of the human trafficking and physical slavery that took place

against [P]laintiff's ancestors centuries ago and are prohibited by the 13th amendment."  *Id.* at

17.  Plaintiff further explains that this includes "challenging state and local laws which compel

---

[5] The Court takes judicial notice of the September 26 Letter which, although not attached to the complaint, is incorporated by reference.  "In adjudicating a motion to dismiss, a court may consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies."  *ASARCO LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014) (internal quotation marks and citation omitted).

[6] "This is what the L[ord] has revealed to [P]laintiff regarding the conspiracy involving UFT: United Federation of Teachers is an anagram of the following: Tease hinder education Effort – UFT's motive is to hinder education efforts . . . An inchoate Tended Forfeitures-A criminal conspiracy to move teachers in the direction of giving up rights . . . ."  Compl. ¶ 204.

God's children to come to school, where they are brainwashed with anti-biblical, non-academic sexually immoral, pagan values-based propaganda, and are taught to blaspheme God, forced to study evolution in violation of their 1st [A]mendment rights and as a mandatory prerequisite of receiving a high school diploma." *Id.* at 18.

Plaintiff further alleges that the DOE has conspired with Pearson PLC ("Pearson"), and its U.S. subsidiaries to "oppress black people and violate the religious and civil rights of all of America's children." *Id.* ¶ 251. Pearson is an international education company headquartered in London, England. *Id.* at 24, 26. Pearson's U.S. business offers educators and students in the U.S. a wide range of products and services including textbooks and other learning materials. *Id.* at 25. According to Plaintiff, Pearson is responsible for teacher licensing and certification in New York State. *Id.* at 26. Plaintiff states that Pearson "controls every aspect of America's education system" and is "operating a racketeer influenced corrupt organization using" the DOE "as a facade." *Id.* ¶ 251.

Plaintiff purports to bring claims under Title VII of the Civil Rights Act of 1964, 18 U.S.C. §2333, 22 U.S.C. § 7101 *et seq.*, the Trafficking Victims Protection Act, 42 U.S.C. §§ 2000e to 2000e-17; 42 U.S.C. §§ 1981, 1983, and 1985(1); the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634; the Rehabilitation Act of 1973, 29 U.S.C. § 701–796; the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101–12213; the Family and Medical Leave Act, 29 U.S.C. §§ 2601–2654; the New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297; the New York City Human Rights Law; the First, Thirteen, and Fourteenth, Amendments of the U.S. Constitution; New York Whistleblower Laws, and state tort law. Compl. at 3–5, 15–16.

II.     Procedural History

Plaintiff filed her original complaint on September 11, 2018. ECF No. 1. This Court dismissed Plaintiff's class claims *sua sponte*, because "a nonlawyer cannot bring suit on behalf of others," and, therefore, "a *pro se* plaintiff cannot act as a class representative." Order of Service at 3, ECF No. 8. The Court also dismissed Plaintiff's claims against three state officials—Governor Andrew M. Cuomo, Betty A. Rosa, Chancellor, New York Board of Regents, and Mary Ellen Elia, New York State Commissioner of Education and President of the University of the State of New York—as barred by the Eleventh Amendment "and as frivolous," and directed service upon Solomon, Cintron, Carranza, and the DOE. *Id.* at 4. That same day, the Court referred the case to the Honorable Barbara C. Moses, Magistrate Judge, for general pretrial management. ECF No. 11.

On February 21, 2019, Plaintiff filed an amended complaint. Compl. The complaint names 24 defendants, including the dismissed New York State defendants. *See generally* Compl. On February 26, 2019, this Court reiterated that the state Defendants had been dismissed. ECF No. 26. On May 20, 2019, Solomon, Cintron, Carranza, and the DOE moved to dismiss the complaint. ECF No. 30. On May 2, 2019, Plaintiff filed (1) oppositions papers, ECF No. 45, (2) a cross-motion for summary judgment, ECF No. 48, (3) a 158-page memorandum of law opposing Defendants' motion to dismiss and supporting Plaintiff's cross-motion for summary judgment, ECF No. 46, and (4) a 142-page declaration, titled "The Prima Facie Case for God's Existence," ECF No. 47. Because Plaintiff's memorandum of law was more than six times the permitted length, Judge Moses struck it and ordered Plaintiff to file a memorandum of appropriate length by June 10, 2019. ECF No. 49 at 5. Plaintiff's cross-motion for summary judgment was also stayed as pre-mature. *Id.*

Plaintiff failed to submit a memorandum of law by June 10, 2019. In light of Plaintiff's *pro se* status, however, Judge Moses *sua sponte* extended Plaintiff's deadline to file her opposition papers to July 10, 2019. ECF No. 56. On July 10, 2019, Plaintiff did not comply with Judge Moses' order but instead filed a motion to "strike" Defendants' motion to dismiss. ECF No. 57. After Defendants filed their reply brief on July 31, 2019, ECF No. 61, Plaintiff filed a motion to "strike" the reply brief. ECF No. 63. Now before the Court are Defendants' motion to dismiss the complaint, ECF No. 30, and Plaintiff's two motions, ECF Nos. 57 and 63.

## DISCUSSION

III. <u>Legal Standard</u>

  A.   Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the non-movant. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). A plaintiff is not required to provide "detailed factual allegations," but must assert "more than labels and conclusions." *Twombly*, 550 U.S. at 555. Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Pleadings cannot survive by making "naked assertions devoid of further factual enhancement," and a court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citations omitted).

"[E]ven if the complaint contains sufficiently 'well-pleaded' allegations, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Gallop v.*

*Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) (internal quotation marks and citation omitted). "A court may dismiss a claim as 'factually frivolous' if the sufficiently well-pleaded facts are 'clearly baseless'—that is, if they are 'fanciful,' 'fantastic.' or 'delusional.'" *Id.* (quoting *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992).

*Pro se* plaintiffs receive special solicitude from courts. Courts must "liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (internal quotation marks and citations omitted). However, even for a *pro se* plaintiff, "conclusory allegations masquerading as factual conclusions [] are insufficient to defeat a motion to dismiss." *Jackson v. Cty. of Rockland*, 450 F. App'x 15, 19 (2d Cir. 2011) (internal quotation marks and citation omitted). Dismissal is justified where "the complaint lacks an allegation regarding an element necessary to obtain relief," and the "duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal quotation marks and citations omitted).

B.    Motion to Strike

Federal Rule of Civil Procedure 12(f) allows a court to strike from a pleading any "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Federal Rule of Civil Procedure 7(a) defines a pleading as "a complaint, an answer to a complaint, an answer to a counterclaim designated as a counterclaim, an answer to a crossclaim, a third-party complaint, an answer to a third-party complaint, and, if the court orders one, a reply to an answer." "Motions, declarations, and affidavits are not pleadings." *Granger v. Gill Abstract Corp.*, 566 F. Supp. 2d 323, 335 (S.D.N.Y. 2008).

IV.  Analysis

    A.  Rule 12(b)(6)

       1.  Frivolousness

When a Plaintiff proceeds *pro se*, a court is obliged to construe her pleadings liberally. *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004).  Where the factual allegations supporting a claim describe fantastic or delusional scenarios, the claims are properly dismissed as clearly baseless.  *Abascal v. Jarkos*, 357 F. App'x 388, 390 (2d Cir. 2009).  "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them."  *Denton*, 504 U.S. at 33.  The Second Circuit has adopted this analysis even when the plaintiff is not a prisoner or has paid the required filing fee.  *See Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (noting that "district courts are especially likely to be exposed to frivolous actions, and thus have an even greater need for inherent authority to dismiss such actions quickly in order to preserve scarce judicial resources").

Even construing Plaintiff's pleadings liberally, the Court holds that the complaint is replete with fantastic and delusional scenarios and, therefore, must be dismissed.  Plaintiff maintains that God is a party to this suit as an unseen plaintiff to reclaim his property, which consists of all descendants of African slaves.  *See* Compl. at 11, 16–19.  Plaintiff states that she has been "specially trained by God to interpret the Word of God using Kabbalah, Data Science and The Lord's Cipher™ to translate God's word for the court."  *Id.* at 10.  On these bases, Plaintiff sets forth unrealistic allegations utilizing unreliable methods such as anagrams.  *See, e.g.*, Compl. ¶¶ 142–144 ("Plaintiff was hired by Gregg Soulette . . . Gregg Soulette is an anagram of 'G Get Reget Soul' translated 'Go Get Reget Soul.'  Reget means - not only retrieve

souls that belong to God, but retrieve souls of the lost – those who once belonged to God and now belong to Satan."); *see id.* at 11, 13; *id.* ¶¶ 94, 97, 168–183, 204. These claims, however, are not tantamount to factual allegations that give rise to cognizable causes of action.

Even Plaintiff's allegations that are couched in legal terms require dismissal. For example, Plaintiff claims that the DOE and UFT conspired to terminate her. *See* Compl. ¶¶ 203–205. The complaint states that Plaintiff's whistle-blowing was a threat to the UFT, which failed to provide Plaintiff with "protection," and looked the other way when Plaintiff was retaliated against. *Id.* ¶ 205. Although Plaintiff is not required to state "detailed factual allegations," she must assert "more than labels and conclusions." *Twombly*, 550 U.S. at 555. Plaintiff's conspiracy allegations amount to "mere conclusions, unsupported by any specific factual assertion" and the Court is not required, "under *Iqbal*, to assume their truth." *Id.* The same holds for Plaintiff's claims that Pearson "operate[s] a racketeer influenced corrupt organization [which] us[es] the New York State Education Department and the New York City Department of Education as a face" to "control[] every aspect of America's education system . . . to oppress black people and violate the religious and civil rights of all of America's children." Compl. ¶ 251.

Although the Court does not question the sincerity of Plaintiff's beliefs, the vast majority of allegations in the complaint are irrational and fantastic. *See Denton*, 504 U.S. at 32–33. Because Plaintiff fails to allege facts that raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, the complaint must be dismissed. *See Abascal*, 357 F. App'x at 390.

Accordingly, Defendants' motion to dismiss the complaint as frivolous is GRANTED.

2. Employment Discrimination

Although the Court has concluded that the entire complaint should be dismissed as frivolous, *see Fitzgerald*, 221 F.3d at 364, given the "special solicitude" afforded to *pro se* plaintiffs, *Hicks v. Moore*, 513 F. App'x 50, 50 (2d Cir. 2013), the Court takes a closer look at Plaintiff's employment discrimination allegations—the least fantastic claims raised by Plaintiff.[7]

a. Standard for Race, National Origin, and Religious Discrimination

Title VII of the Civil Rights Act of 1964 ("Title VII") provides that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a). To establish a claim under Title VII, a claimant must show that: (1) she belonged to a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003).

Under Title VII, "adverse employment action" is defined as a "materially adverse change" in the terms and conditions of employment, which is "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Sanders v. New York City Human Resources Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (internal quotation marks and citation omitted). Examples include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Id.* (internal

---

[7] To the extent Plaintiff alleges discrimination under state law, the Court analyzes her federal and state law discrimination claims together as courts often do in this circuit. *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003) ("We analyze plaintiff's federal and state law discrimination claims together since in other contexts we have applied federal standards of proof to discrimination claims under the state Human Rights Law.").

quotation marks and citation omitted). "The Supreme Court has explained that an adverse action must be *materially* adverse, and that 'normally petty slights, minor annoyances, and simple lack of good manners' will not rise to the level of an adverse action." *Garcia v. NYC Health & Hosps. Corp.*, No. 19 Civ. 997, 2019 WL 6878729, at *8 (S.D.N.Y. Dec. 17, 2019) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

i.    Race and National Origin Discrimination

Plaintiff claims that Defendants discriminated against her based on her race and national origin. Reading her complaint liberally, she appears to allege that Solomon "disciplined" her for alerting school administrators about her dispute with Smith, who is white, by threatening to give Plaintiff a negative rating for undermining a white teacher. *See* Compl. ¶¶ 162, 163, 322. Plaintiff claims that Solomon threatened her "simply because [she] is black." *Id.* ¶ 193.

Plaintiff fails to state a plausible cause of action for race or national origin discrimination. First, although Plaintiff claims that Defendants discriminated against her because she is black and a descendant of African slaves, she states no facts to support this allegation other than the claim that she is black and Solomon and Smith are white. These allegations do not adequately plead a Title VII race or national origin discrimination claim because "conclusory allegations masquerading as factual conclusions . . . are insufficient." *Jackson*, 450 F. App'x at 19 (internal quotation marks and citation omitted); *see also Nguedi v. Fed. Reserve Bank of New York*, No. 16 Civ. 0636, 2017 WL 2557263, at *5 n.3 (S.D.N.Y. June 12, 2017) ("Plaintiff's conclusory allegations that he was arrested 'just because he is black,' that his termination was 'rooted in racism and racial discrimination,' and that he was subjected to 'discrete adverse employment actions as well as a hostile work environment based on race and national origin,' are, of course, insufficient to sustain his claim without the requisite minimal factual support." (internal citations

and alterations omitted)); *Perry v. Sony Music*, 462 F. Supp. 2d 518, 520 (S.D.N.Y. 2006) (finding that plaintiff's claims that job assignment made him feel like a "lackey" and allegation that his race played a role in employer's decision to terminate his employment conclusory because plaintiff provided "no further detail manifesting any form of racial animus, discriminatory words, prior incidents or other indications that his race played a role" in the adverse employment action).

Second, Plaintiff's allegation that Solomon threatened to give her a negative rating for undermining Smith—whether perceived as a reprimand, or, a threat of disciplinary action—does not amount to an adverse employment action. *See, e.g.*, *Honey v. Cnty. of Rockland*, 200 F. Supp. 2d 311, 320 (S.D.N.Y. 2002) (noting that although "[a] reprimand can constitute an adverse employment action," "threats of disciplinary action . . . do not constitute adverse employment actions in the absence of other negative results such as a decrease in pay or being placed on probation"); *Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 248 (S.D.N.Y. 2001) ("Courts in this district have found that reprimands, threats of disciplinary action, and excessive scrutiny do not constitute adverse employment actions." (collecting case)). Similarly, Plaintiff's assertion that Solomon felt "not comfortable with [her] presence," Compl. ¶ 147, does not allege an adverse employment action, because even if Solomon's feeling was perceptible, it would not be "more disruptive than a mere inconvenience" and does not amount to "an alteration of job responsibilities." *Sanders*, 361 F.3d at 755 (internal quotation marks and citation omitted).

Accordingly, Defendants' motion to dismiss Plaintiff's race and national origin discrimination claims is GRANTED.

ii.    Religious Discrimination

Plaintiff's employment discrimination claim based on religion also fails.  The allegation

that "[t]ension grew between" Plaintiff and her co-teacher, Smith, who Plaintiff claims "refused

to work with [Plaintiff] . . . because [she] wore a headscarf which resembled a hijab—a head

covering worn in public by some Muslim women, though [Plaintiff] is Christian," Compl. ¶¶

151–152, is insufficient to establish the elements of a cause of action for religious discrimination.

First, Plaintiff does not allege that she suffered an adverse employment action.  Although

she claims that Smith "refused to work with" her, Compl. ¶ 151, Smith's conduct cannot be

characterized as behavior that was "more disruptive than a mere inconvenience or alteration of

job responsibilities." *White v. Andy Frain Servs., Inc.*, 629 F. App'x 131, 133 (2d Cir. 2015)

(internal quotation marks and citation omitted).  Moreover, the allegation that there was

"tension" between Smith and Plaintiff also fails to satisfy the adverse employment action

element because it typifies the "trivial harms" and "petty slights or minor annoyances that often

take place at work." *Burlington*, 548 U.S. at 68.

Defendants' assigning Plaintiff to teach math instead of science, *see* Compl. ¶¶ 200–201,

which Plaintiff describes as an unfavorable work assignment, without more, likewise does not

amount to an adverse employment action under Title VII.  *See, e.g.*, *Kunik v. New York City

Dep't of Educ.*, No. 15 Civ. 9512, 2020 WL 508897, at *6 (S.D.N.Y. Jan. 31, 2020) (finding that

increased course load that was not "so burdensome as to constitute a departure from normal

academic practice" was not an adverse employment action); *Smalls v. Allstate Ins. Co.*, 396 F.

Supp. 2d 364, 371 (S.D.N.Y. 2005) ("[R]eceiving unfavorable schedules or work

assignments . . . do not rise to the level of adverse employment actions." (internal quotation

marks and citation omitted)); *see also Dimitracopoulos v. City of New York*, 26 F. Supp. 3d 200,

213 (E.D.N.Y. 2014) ("Scheduling and assignment issues involving course loads are generally not considered materially adverse employment actions.").

Second, even assuming that Plaintiff had alleged an adverse employment action, she does not claim that such action occurred under circumstances giving rise to an inference of discriminatory intent. *Terry*, 336 F.3d at 138. "[N]othing in the pleadings . . . suggest that [the refusal to work with Plaintiff] was motivated by religious considerations." *See Soliman v. City of New York*, No. 15 Civ. 5310, 2017 WL 1229730, at *5 (E.D.N.Y. Mar. 31, 2017). Plaintiff does not allege that any comments were made about her headscarf, that she was asked to remove it, or anything that would suggest that the alleged discrimination she faced was related to the headscarf. Plaintiff's naked assertion that Smith refused to work with her because she wore a headscarf does not state a claim for relief that is plausible on its face. *See Iqbal*, 556 U.S. at 678.

Accordingly, Defendants' motion to dismiss Plaintiff's religious discrimination claim is GRANTED.

### b. Age Discrimination

The Age Discrimination in Employment Act ("ADEA") prohibits discrimination in employment on the basis of age against persons aged 40 or older. *D'Cunha v. Genovese/Eckerd Corp.*, 479 F.3d 193, 194 (2d Cir. 2007) (citing 29 U.S.C. §§ 623(a)(1), 631(a)). To state an ADEA claim, a plaintiff must show (1) membership in the protected age group, (2) qualifications for the job at issue, (3) an adverse employment action, and (4) that the adverse action occurred under circumstances giving rise to an inference of discrimination. *Id.* at 195.

Plaintiff, who is 57 years old, *see* Compl. ¶ 1, bases her age discrimination claim on a remark made by Solomon. Plaintiff claims that during a conference attended by Solomon, Plaintiff, and Thomas (Plaintiff's union representative), Solomon was "prepared" to include a disciplinary notice in Plaintiff's file. *Id.* ¶ 200. Thomas asked Solomon to not do so because

Plaintiff was a new teacher and "it was customary to give new teachers some leeway for making mistakes." *Id.* Solomon responded that Plaintiff "was old enough to know better." *Id.* Plaintiff contends that this implies that if Plaintiff were younger, she would have been offered the greater degree of latitude afforded to younger teachers. *Id.*

But Plaintiff does not state that Solomon placed a disciplinary notice in her file, much less that she experienced any other adverse employment action because of her age. To the extent Plaintiff alleges that Solomon was "prepared" to include a disciplinary notice in her file, such an inclination to act does not rise to the level of an adverse employment action. *See, e.g.*, *Honey*, 200 F. Supp. 2d at 320 ("[T]hreats of disciplinary action . . . do not constitute adverse employment actions in the absence of other negative results such as a decrease in pay or being placed on probation."). Courts within the Second Circuit have also held that "stray remarks 'without more,' even when made by a decision maker, 'do not constitute sufficient evidence to make out a case of employment discrimination.'" *Early v. Wyeth Pharm., Inc.*, 603 F. Supp. 2d 556, 584 (S.D.N.Y. 2009) (quoting *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998)). Plaintiff's age discrimination claim, without more, therefore, fails.

Accordingly, Defendants' motion to dismiss Plaintiff's age discrimination claim is GRANTED.

c.   Termination of Employment

To state a claim for race, national origin, or religious discrimination, under Title VII, or age discrimination, under the ADEA, a plaintiff must allege, *inter alia*, that (1) she experienced an adverse employment action and (2) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *See, e.g.*, *Terry*, 336 F.3d at 138; *D'Cunha*, 479 F.3d at 195. Termination of employment constitutes an adverse employment action. *See Sanders*, 361 F.3d at 755 (internal quotation marks and citation omitted).

As the Court discusses below, Defendants terminated Plaintiff's employment. *See* Compl. at 17; *id.* ¶ 325. Plaintiff alleges that she was fired in retaliation for certain actions taken by her. *Id.* Plaintiff does not claim, however, that her employment was terminated because of her race, national origin, religion, or age. *See generally* Compl. Because the "duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it," the Court does not read Plaintiff's complaint to allege that she was fired because of her race, national origin, religion, or age. *Geldzahler*, 663 F. Supp. 2d at 387 (internal quotation marks, citations, and alterations omitted). Even if the Court were to read Plaintiff's complaint as alleging employment discrimination based on these grounds, dismissal would be warranted because the complaint contains no facts which establish such causes of action. *See id.* (stating that dismissal is justified where "the complaint lacks an allegation regarding an element necessary to obtain relief").

### d.  Retaliation

#### i.  First Amendment Retaliation

Plaintiff alleges that she "blew the whistle on the brainwashing, oppression[,] and mistreatment of descendants of African slaves at the Business of Sports School," Compl. at 17, spoke out against such "wrongdoing," *id.* at 6, and was fired for doing so. Construing Plaintiff's complaint liberally, she appears to be making a claim for retaliation in violation of the First Amendment of the U.S. Constitution. *See id.* at 15.

To plead a claim of retaliation in violation of the First Amendment, a public employee plaintiff must allege (1) that she engaged in activity protected by the First Amendment; (2) that she suffered an adverse employment action; and (3) that there was a causal connection between the protected activity and the adverse employment action. *Smith v. City of New York*, 130 F. Supp. 3d 819, 831 (S.D.N.Y. 2015), *aff'd*, 664 F. App'x 45 (2d Cir. 2016).

Plaintiff's First Amendment retaliation claim necessarily fails because "it is well established that a teacher's communications made within internal school channels about the teacher's working conditions and the treatment of the teacher's students are deemed to be pursuant to the teacher's official duties and therefore do not constitute First Amendment protected speech." *Smith*, 130 F. Supp. 3d at 832 (collecting cases). Plaintiff's First Amendment retaliation claim, therefore, must be dismissed.

ii.     Retaliation for Complaining of Discrimination

"Title VII . . . forbids retaliation against an employee for complaining of prohibited employment discrimination, stating that '[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII].'" *Cifra v. G.E. Co.*, 252 F.3d 205, 216 (2d Cir. 2001) (quoting 42 U.S.C. § 2000e–3(a)). To state a claim for retaliation under Title VII, a plaintiff must show: (1) she was engaged in protected activity; (2) the employer was aware of the activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. *Kendricks v. Westhab, Inc.*, 163 F. Supp. 2d 263, 270 (S.D.N.Y. 2001), *aff'd*, 40 F. App'x 619 (2d Cir. 2002).

Plaintiff alleges that Solomon retaliated against her for commencing this action and complaining to the state Department of Education. Compl. ¶ 325. On September 21, 2018, Solomon held a disciplinary conference in his office to discuss the fact that Plaintiff had moved from New York to Virginia in violation of Chancellor's Regulation C-603, which prohibits relocation either permanently or temporarily to any place remote from an employee's home of record without the "express written permission of the DOE Chancellor or School Medical Director." September 26 Letter.

Plaintiff has not set forth sufficient facts to plead a cause of action for retaliation. Plaintiff does not claim that on September 21, 2018, Solomon was even aware that she had commenced this action, which was filed ten days earlier.[8]  Plaintiff, therefore, has not shown a causal connection between her initiating this action and Solomon's decision to call a meeting to discuss her violation of Chancellor's Regulation C-603.  On the contrary, the more plausible inference is that Solomon raised the issue with Plaintiff because she was in fact living in Virginia during her leave.  *See* September 26 Letter.  Although the Court must accept Plaintiff's allegations as true for the purpose of deciding a motion to dismiss, it need not do so when the pleadings are contradicted by facts of which the Court may take judicial notice, such as the September 26 Letter, which is integral to the complaint.  "District courts possess the inherent power to pierce the veil of a complaint to determine if it is without factual basis."  *Blake v. Prudential Ins. Co. of Am.*, No. 14 Civ. 7042, 2016 WL 1301183, at *2 (S.D.N.Y. Mar. 31, 2016), *aff'd*, 683 F. App'x 69 (2d Cir. 2017).

"Notwithstanding the liberal pleading standard in Title VII cases (especially for *pro se* litigants)," *Ramos v. New York City Dep't of Corr.*, No. 05 Civ. 223, 2006 WL 1120631, at * 7 (E.D.N.Y. April 26, 2006), Plaintiff's "vague, conclusory pleadings are insufficient to withstand a motion to dismiss a complaint for failure to state a claim upon which relief may be granted." *Saidin v. New York City Dep't of Educ.*, 498 F. Supp. 2d 683, 688 (S.D.N.Y. 2007).

Accordingly, Defendants' motion to dismiss Plaintiff's retaliation claim is GRANTED.

### 3.  State Law Claims

New York State's Education Law and General Municipal Law forbid bringing any claim against a school district or its officers unless the party seeking to bring the claim first files a

---

[8] Likewise, Plaintiff does not state when she filed the complaint with the state Department of Education, that Solomon was aware of the complaint, or any facts that link her complaint to Defendants' decision to fire her.

written notice of claim on the governing board of the school district within ninety days of the claim arising.  N.Y. Educ. L. § 3813(1); N.Y. Gen. Mun. Law § 50-e(1)(a).  "Thus, a failure to present a claim within ninety days of its accrual is a fatal defect."  *Biggers v. Brookhaven-Comsewogue Union Free Sch. Dist.*, 127 F. Supp. 2d 452, 455 (S.D.N.Y. 2001).  Courts are without power to disregard a failure to comply with notice of claim requirements, even to avoid a harsh result such as dismissal of an action.  *Parochial Bus Systems v. Board of Education*, 458 N.E.2d 1241, 1245 (N.Y. 1983).  Plaintiff has failed to plead that she filed a notice of claim, and there is no notice of claim on file with the New York State Comptroller's Office.  *See generally* Compl.; *see also* Def. Mem. at 20.

Accordingly, Defendants' motion to dismiss Plaintiff's state law claims is GRANTED.

### 4.  Class Representation

A plaintiff has the right to proceed *pro se* in a civil action pursuant to 28 U.S.C. § 1654 but may not "seek to represent the interests of third-parties."  *Rodriguez v. Eastman Kodak Co.*, 88 F. App'x 470, 471 (2d Cir. 2004).  It is well established that "a *pro se* class representative cannot adequately represent the interests of other class members."  *Id.* (internal quotation marks and citation omitted).

Plaintiff brings this action on her own behalf and on behalf of all DOAS.  Compl. ¶ 120; *see, e.g.*, *id.* at 24 ("Plaintiff is challenging certain New York State and New York City laws which are unconstitutional, and which have been established for the sole purpose of oppressing [P]laintiff and others like her - descendants of African slaves."); *id.* at 17 ("[T]his is a case about employment discrimination and retaliation, whereby [P]laintiff was fired from her job as a special education teacher for blowing the whistle on the brainwashing, oppression and mistreatment of descendants of African slaves at the Business of Sports School.").

Because Plaintiff is self-represented, she may not bring claims on behalf of anyone else. *Rodriguez*, 88 F. App'x at 471.

Accordingly, Defendants' motion to dismiss Plaintiff's class claims is GRANTED.

### B. Motions to Strike

In response to Defendants' motion to dismiss, Plaintiff filed a motion to "strike" Defendants' motion. ECF No. 57. Plaintiff also seeks to "strike" Defendants' reply brief. ECF No. 63. Federal Rule of Civil Procedure 12(f) allows a court to strike from a *pleading* any "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions, declarations, and affidavits are not pleadings. *See* Fed. R. Civ. P. 7(a) (defining pleadings as the complaint, answer, counter—and crossclaims); *Sierra v. United States*, No. 97 Civ. 9329, 1998 WL 599715, at *9 (S.D.N.Y. Sept.10, 1998) (denying plaintiff's motion to strike defendant's motion to dismiss because a motion is not a pleading).

Accordingly, Plaintiff's motions to "strike," ECF Nos. 57 and 63, are DENIED.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED, and Plaintiff's motions to "strike," ECF Nos. 57 and 63, are DENIED. Furthermore, because the Court finds that the complaint is frivolous, the Court dismisses the complaint in its entirety. *Cf. Fitzgerald*, 221 F.3d at 364 ("[D]istrict courts may dismiss a frivolous complaint *sua sponte*[.]").

Because even "a liberal reading of the complaint" does not give "any indication that a valid claim might be stated," the Court denies Plaintiff leave to amend the complaint. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation marks and citation omitted). "The problem with [the complaint's] causes of action is substantive; better pleading will not cure it." *Id.*

The Clerk of Court is directed to (1) terminate the motions at ECF Nos. 30, 57, and 63;

(2) mail a copy of this order to Plaintiff *pro se*, and (3) close this case.

SO ORDERED.

Dated:  March 17, 2020
        New York, New York

_____
ANALISA TORRES
United States District Judge